UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

EDWARD C. HUGLER, Acting Secretary of Labor,   :
United States Department of Labor,
                                               :
                Plaintiff,     **COMPLAINT**
     v.                              :
                                               Case No. 1:17-CV-0419 (DNH/DJS)

TIRE WAREHOUSE OF TROY, INC. d/b/a THE         :
TIRE WAREHOUSE, TIRE WAREHOUSE OF
CLIFTON PARK, INC. d/b/a THE TIRE              :
WAREHOUSE, TIRE WAREHOUSE OF NORTH
COUNTRY, INC. d/b/a THE TIRE WAREHOUSE,        :
JOHN McCALL, Individually and as President, and
BRIAN McCALL, Individually and as Vice-President, :

                                               :

                Defendants.
-------------------------------------------------------------------

1. Plaintiff, EDWARD C. HUGLER, Acting Secretary of Labor, United States Department of Labor (the "Secretary"), by and through undersigned counsel, brings this action under Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) ("the Act" or "the FLSA"), alleging that defendants violated Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act to recover back wages, liquidated damages, and to enjoin acts and practices which violate the provisions of the FLSA, and to obtain other appropriate relief.

2. The Secretary brings this action seeking, *inter alia*, unpaid overtime compensation for mechanics, tire technicians, and service managers who provided services at Defendants' automotive repair and supply stores.

3. Defendants failed to include non-discretionary bonuses in calculating their employees' overtime pay, thereby failing to pay those workers all the overtime compensation to which they were lawfully entitled.

4. Moreover, Defendants failed to pay any overtime compensation whatsoever to service managers, who primarily provided customer support, ordered inventory, and stocked products. Nor did Defendants keep any records of hours worked by service managers, in direct contravention of the Act's recordkeeping requirements.

5. As a result, Defendants violated the overtime and recordkeeping requirements of the Act.

## JURISDICTION AND VENUE

6. Jurisdiction over this action is properly conferred upon this Court by Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

7. Venue is proper in the United States District Court for the Northern District of New York because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

### The Parties

8. Plaintiff, EDWARD C. HUGLER, Acting Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages and is the proper plaintiff for this action.

9. Defendant TIRE WAREHOUSE OF TROY, INC. doing business as THE TIRE WAREHOUSE ("Tire Warehouse Troy") is a corporation organized under the laws of the State of New York, having its principal place of business at 649 River Street, Troy, NY 12180 within

the jurisdiction of this court, where it is engaged in the automotive repair, wheel alignment, and tire services business.

10. Defendant TIRE WAREHOUSE OF CLIFTON PARK, INC. doing business as THE TIRE WAREHOUSE ("Tire Warehouse Clifton Park") is a corporation organized under the laws of the State of New York, having its principal place of business at 1430 Halfmoon Parkway, Clifton Park, NY 12065 within the jurisdiction of this court, where it is engaged in the automotive repair, wheel alignment, and tire services business.

11. Defendant TIRE WAREHOUSE OF NORTH COUNTRY, INC. doing business as THE TIRE WAREHOUSE ("Tire Warehouse North Country") is a corporation organized under the laws of the State of New York. Tire Warehouse North Country operates two establishments, one located at 274 Quaker Road, Queensbury, NY 12804, 1717 Union Street, Schenectady, NY 12309 and one located at 1717 Union Street, Schenectady, NY 12309, both within the jurisdiction of this court, where they are engaged in the automotive repair, wheel alignment, and tire services business.

12. The defendant businesses referenced in paragraphs 4 through 7 above (collectively the "corporate defendants") have regulated the employment of all persons employed by them, acted directly and indirectly in the companies' interest in relation to the employees, and thus are employers of the employees within the meaning of Section 3(d) of the Act.

13. Defendant JOHN McCALL is the President and owner of the corporate defendants.

14. Defendant John McCall is in active control and management of all the corporate defendants.

15. Defendant John McCall has authority to and does hire, fire, supervise, set the hours and compensation of employees, and otherwise has acted directly and indirectly in the interest of all of the corporate defendants in relation to employees during the relevant time period. He is thus an employer of the employees within the meaning of Section 3(d) of the Act.

16. Defendant BRIAN McCALL is the Vice-President of the corporate defendants.

17. Defendant Brian McCall is in active control and management of all the corporate defendants.

18. Defendant Brian McCall has authority to and does hire, fire, supervise, set the hours and compensation of employees, and otherwise has acted directly and indirectly in the interest of all of the corporate defendants in relation to employees during the relevant time period. He is thus an employer of the employees within the meaning of Section 3(d) of the Act.

**Tolling Agreement**

19. Defendants and the Secretary knowingly and voluntarily entered into a Statute of Limitations Tolling Agreement (the "tolling agreement").

20. The tolling agreement tolled the applicable statute of limitations from June 1, 2016, until December 31, 2016.

21. Accordingly, the statute of limitations shall be tolled from June 1, 2016, until December 31, 2016 and this time shall not be included in computing the running of the statute of limitations.

### Defendants Are an Enterprise Engaged in Commerce

22. The business activities of defendants, as described herein, are related and performed through common control for a common business purpose and constitute an enterprise within the meaning of Section 3(r) of the Act.

23. Defendants are engaged in operating four automotive services shops doing business as "The Tire Warehouse." The corporate defendants share a single website, http://www.thetirewarehouseinc.com, which lists services provided at all locations.

24. The corporate defendants are centrally managed and overseen by defendants John and Brian McCall.

25. The corporate defendants are commonly owned by individual defendant John McCall.

26. Each of the corporate defendant's payroll is transmitted to, and processed by, office staff working out of the Queensbury location.

27. The enterprise (and each individual defendant corporation) has had an annual gross volume of sales made or business done in an amount not less than $500,000 for the period covered by this Complaint. The enterprise has employees handing, selling, and working on goods or materials that have been moved in or produced for commerce, such as tires and automotive supplies.

28. Accordingly, the employees are employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the Act.

## Defendants' Pay and Recordkeeping Practices

29. At all relevant times through at least May 2016, defendants employed workers as store managers, service or sales managers ("service managers"), mechanics, and tire technicians.

30. Each of defendants' four locations typically employed at least one store manager, mechanic, tire technician, and service manager during the relevant time period.

<u>Mechanics</u>

31. Until at least May 2016, defendants set weekly sales goals for mechanics.

32. Defendants paid mechanics bonuses when they exceeded their sales goals.

33. When a mechanic exceeded their sales target, defendants paid them a bonus consisting of 10% of their sales above that benchmark.

34. Defendants calculated and paid mechanics their bonuses on a weekly basis.

35. Defendants recorded mechanics' bonus payments each week on their payroll records.

36. So long as the relevant criteria were met, defendants' policies required them to pay mechanics the bonuses described in paragraphs 31 to 35.

37. So long as the relevant criteria were met, defendants did in fact typically pay mechanics the bonuses described in paragraphs 31 to 35.

38. At all times relevant to this complaint, defendants' mechanics routinely worked in excess of 40 hours in a single week.

39. Mechanics routinely worked between 45 and 55 hours in a single week.

40. On occasion, mechanics worked more than 55 hours in a single week.

41. When mechanics worked in excess of 40 hours in a week, defendants paid them time and a half their regular, hourly rate.

42. However, during the relevant time period, defendants failed to include bonuses paid to mechanics in calculating mechanics' regular rate of pay for overtime purposes.

Tire Technicians

43. Through at least May 2016, defendants paid experienced tire technicians bonuses for performing wheel alignments.

44. During the relevant time period, defendants paid experienced tire technicians $3.00 for each wheel alignment completed.

45. Defendants calculated and paid tire technicians' bonuses on a weekly basis.

46. Defendants recorded tire technicians' bonus payments each week on their payroll records.

47. So long as the relevant criteria were met, defendants' policies required them to pay tire technicians the bonuses described in paragraphs 43 to 47.

48. So long as the relevant criteria were met, defendants did in fact typically pay tire technicians the bonuses described in paragraphs 43 to 47.

49. At all times relevant to this complaint, defendants' tire technicians routinely worked in excess of 40 hours in a single week.

50. Tire technicians routinely worked between 42 and 50 hours in a single week.

51. On occasion, tire technicians worked more than 50 hours in a single week.

52. When tire technicians worked in excess of 40 hours in a week, defendants paid them time and a half their regular, hourly rate.

53. However, during the relevant time period, defendants failed to include bonuses paid to tire technicians in calculating their regular rate of pay for overtime purposes.

Service Managers

54. Each of defendants' establishments are typically managed by a store manager.

55. Store managers are the highest positions of authority within each location.

56. Store managers' primary duty is management and they are ultimately in charge of each store.

57. Store managers work roughly the same hours as service managers.

58. Store managers have the authority to hire, fire, discipline, and schedule employees at their Tire Warehouse location.

59. Store managers are responsible for transmitting payroll to defendants' central Queensbury office for processing.

60. Store managers closely supervise the service managers.

61. Store managers have the authority to assign tasks to service managers.

62. Service managers do not hire, fire, or interview workers.

63. Service managers do not make recommendations as to whether workers should be hired or fired.

64. Service managers spend the bulk of their time helping customers, answering phones, ordering parts, and stocking inventory.

65. The primary duty of service managers is not management but rather customer service and inventory.

66. Service managers do not schedule employees.

67. Service managers do not typically supervise employees.

68. At times relevant to this complaint, until approximately March 2016, defendants did not track the daily or weekly hours worked by service managers.

8

69. Instead, until approximately March 2016, defendants paid service managers flat salaries for all hours worked.

70. At all times relevant to this complaint, until approximately March 2016, defendants improperly misclassified service managers as exempt even though they primarily performed non-exempt hourly work.

71. Service managers regularly worked in excess of 40 hours in a single week.

72. Service managers typically worked approximately 59 hours each week.

73. Until approximately March 2016, defendants did not pay service managers any additional compensation for hours worked in excess of 40 each week.

74. Defendants began paying service managers on an hourly basis, and began paying them overtime compensation, in or about March 2016.

75. Through at least May 2016, Defendants paid service managers bonuses based on the profitability of their Tires Warehouse location.

76. During the relevant time period, defendants paid service managers bonuses when the profit margin of their Tire Warehouse location was at least 72%. If this profitability benchmark was reached, defendants paid the service manager a bonus of 1.4% of total sales.

77. Defendants calculated and paid service managers their bonuses on a weekly basis.

78. Defendants recorded service managers' bonus payments each week on their payroll records.

79. So long as the relevant criteria were met, defendants' policies required them to pay service managers the bonuses described in paragraphs 75 to 78.

80. So long as the relevant criteria were met, defendants did in fact typically pay service managers the bonuses described in paragraphs 75 to 78.

## FIRST CAUSE OF ACTION
### Violation of Sections 7(a) and 15(a)(2) of the FLSA, Failure to Pay Overtime

81. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 80 of the Complaint.

82. Defendants in many workweeks have violated the provisions of sections 7 and 15(a)(2) of the Act by employing their employees in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than those prescribed in section 7 of the Act without compensating the employees for their employment in excess of the prescribed hours at rates not less than one and one-half times the regular rates at which they were employed.

83. As set forth above, defendants paid their employees non-discretionary bonuses.

84. Defendants failed to include these bonuses in their employees' regular rates as required by section 7 of the Act and 29 C.F.R. § 778.211.

85. Moreover, defendants compensated service managers who regularly worked over 40 hours each workweek with set salaries regardless of the number of hours worked. Defendants paid no additional overtime premiums to service managers for hours worked in excess of 40 in a workweek.

86. Therefore, defendants are liable for unpaid overtime compensation and an equal amount in liquidated damages under section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid overtime compensation and prejudgment interest on said unpaid overtime compensation under section 17 of the Act.

## SECOND CAUSE OF ACTION
### Violation of Sections 11(c) and 15(a)(5) of the FLSA

87. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 80 of the Complaint.

88. Defendants have violated the provisions of sections 11(c) and 15(a)(5) of the Act, in that defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment which they maintained as prescribed by the regulations issued and found at 29 C.F.R. Part 516. More specifically, defendants failed to keep accurate records of hours worked by service managers until approximately March 2016.

**WHEREFORE**, cause having been shown, plaintiff respectfully prays for judgment against defendants providing the following relief:

1. An injunction issued pursuant to Section 17 of the Act permanently restraining defendants, their officers, agents, servants, employees, and those persons in active concern or participation with defendants, from violating the provisions of Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act;

2. An order pursuant to Section 16(c) of the Act finding defendants liable for unpaid overtime compensation found due Defendants' employees listed on the attached Exhibit A and an equal amount of liquidated damages (additional overtime compensation and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the period covered by this Complaint); or

3. In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining defendants, their officers, agents, employees, and those persons in active concert or participation with defendants, from withholding the amount of unpaid overtime compensation found due defendants' employees and prejudgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

4. An order compelling defendants to reimburse the Secretary for the costs of this action; and

5. An order granting such other relief as the Court may deem necessary or appropriate.

DATED: April 14, 2017
New York, New York

NICHOLAS C. GEALE
Acting Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

s/Elena Goldstein
ELENA GOLDSTEIN
Senior Trial Attorney
U.S. Department of Labor
Office of the Regional Solicitor
201 Varick Street, Room 983
New York, NY 10014
(646) 264-3686
(646) 264-3660 (fax)
Goldstein.elena@dol.gov
NY-SOL-ECF@dol.gov
*Attorneys for Plaintiff*
*Acting Secretary of Labor*

13

# EXHIBIT A

Arnold, Zack
Barber, Robert
Bleau, David
Braley, David
Brites, Sebastian
Davis, Ryan
Echancy, Louis
Estvanic, Joseph
Geroux, Jason
Guynup, David
Haber, Edmund
Jaycox, Thomas
Kvinlaug, Eric
Litts, Jeffery
Matthews, Christopher
Merrill, Michael
Meyers, Robert
Miller, Eric
Mongiardo, Michael
Nahumyk, Gregory
Nowhiteny, Jason
Paigo, James
Price, Paul
Rogner, Chad
Sauer, Gregory
Sisco Jr., Richard
Sisco Sr., David
Sitterly, Donald
Smith, Anthony
Stanley, Brandon
Thomas, Cozzens Jr.
Truax, Raymond
Vanwormer, Timothy
Vlahovich, Kyle
Welch, Kevin
Wilcox Jr., John
Williams, Joseph